UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JOURNEY ACQUISITION-II, L.P., ) | |
| ) | Civ. No: 12-108-GFVT |
| Plaintiff, ) | |
| ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| EQT PRODUCTION COMPANY, ) | **ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant EQT Production Company (EQT) wants a do-over.  After a week-long trial, EQT is clearly unhappy with the outcome and wants to re-litigate the issues.  Unfortunately for EQT, the Federal Rules of Civil Procedure do not provide the losing party with a second chance just because that party disagrees with a jury's verdict or a judge's decision.  More than mere disagreement with the outcome is required.  EQT continues to experience the same difficulty it has had throughout this litigation – that of meeting the legal standards required to obtain its goals.  Because EQT has failed to satisfy that legal standard, its post-trial motions will be DENIED.  In one motion, EQT requests judgment as a matter of law, a new trial, entry of judgment in its favor concerning its equitable defenses, and also requests that the trespass wells not be transferred to the Plaintiff. [R. 198.]  Plaintiff Journey Acquisition-II, LP (Journey) opposes each of EQT's motions and moves for entry of judgment in Journey's favor concerning EQT's equitable defenses.  [R. 204, R. 205.]  For the reasons explained below, EQT's post-trial motions will be DENIED, and Journey's Motion for Entry of Judgment will be finally resolved by separate order.

**I**

The Court has set out the factual background in previous orders, and will only give a brief recitation of the facts and procedural posture here to provide the necessary context for the instant motions.[1] In 2001, EQT and Journey entered into a contract by which EQT agreed to sell, lease, and otherwise transfer certain lands as well as certain interests in oil, natural gas, mineral rights, and related assets connected to several large tracts of land located in southeastern Kentucky – mainly in Letcher, Perry, and Leslie Counties. This lawsuit arose from a dispute between the parties as to which property and interests were actually conveyed. The disputed properties include tracts of land that EQT owned, lands and interests that EQT leased from third-party owners, and several hundred existing wells and their associated equipment and operations. Throughout this litigation, EQT has maintained that it intended to convey only the lands, wells, and interests located wholly within blue-outlined boundaries on a series of maps attached to the parties' contract as Exhibit N. Journey, however, contends that the properties and interests conveyed were those specifically listed and described on other attached exhibits.

Journey brought suit in this Court in June 2012. After much discovery and several amended complaints, EQT moved for summary judgment, and Journey filed four motions for partial summary judgment. In August 2014, the Court issued a Memorandum Opinion and Order in which it denied EQT's motion for summary judgment and granted three of Journey's motions for summary judgment while partially granting the fourth. [R. 141.] Specifically, the Court found that the documents at issue were not ambiguous, and that extrinsic evidence of EQT's intent concerning their meaning was not admissible. [R. 141 at 17-26, 30-33.] The Court also found that the plain language of the contract stated that EQT must convey to Journey any of the oil, gas, or fee mineral interests located within the geographic areas outlined in blue on the

---

[1] A more detailed factual account is incorporated by reference from the Court's Opinion at Docket Entry No. 141.

Exhibit N maps, and that to the extent that EQT had not conveyed those interests, EQT was in breach of the contract. [*Id*. at 26-29.] In light of its findings concerning ambiguity, the Court further found that the conveyances were not limited to only the interests within the blue lines, but that the contractual documents also unambiguously conveyed to Journey the interests specifically listed and described on certain attached exhibits. [*Id*. at 26-27, 34-35.] In doing so, the Court also found that EQT had not met its burden of demonstrating mutual mistake, and therefore rejected EQT's request for reformation of the contract. [*Id*. at 35-41.] Thus, because EQT had been operating wells on land that Journey owned, the Court found that EQT was in breach of contract and had committed trespass.

Despite these findings, however, the Court determined that a trial was necessary to resolve certain factual issues. Accordingly, the Court held a jury trial beginning on September 8, 2014, to assist in resolving the following issues: 1) whether any of Journey's claims were barred by EQT's defenses of laches, waiver, and estoppel, each of which involved factual disputes concerning timing, certain people's knowledge, and alleged misrepresentation or concealment; and 2) whether EQT was an "innocent" trespasser or a "bad faith" trespasser, a question which also involved factual determinations and had particular relevance to the amount of damages EQT owed. The resolution of these issues also would affect the final determination of questions such as whether EQT must pay Journey the past revenues for the trespass wells for the entire period between July 2001 and the present; and if so, whether EQT must pay Journey prejudgment interest on those revenues. Because the defenses of laches, waiver, and estoppel are equitable in nature, the jury acted only in an advisory capacity concerning those defenses, but issued a binding verdict concerning EQT's innocent trespass claim. After a week-long jury trial, the jury rejected each of EQT's equitable defenses, and separately found that EQT committed bad-faith

trespass concerning certain listed wells belonging to Journey. Accordingly, Journey requests the Court enter judgment in accordance with the jury's verdict, and renews its argument for prejudgment interest on all past revenues owed to Journey. [R. 204, 205.] EQT, however, has moved for judgment as a matter of law in its favor, and also requests a new trial. [R. 198.]

Because EQT moved for judgment as a matter of law at trial [R. 192], EQT is essentially renewing that motion concerning the binding portion of the verdict. Federal Rule of Civil Procedure 50(b) governs the renewal of a motion for judgment as a matter of law after trial, and it allows the court to either enter judgment on the jury's verdict, direct entry of judgment as a matter of law despite the verdict, or to order a new trial. Fed.R.Civ.P. 50(b). Although ordering a new trial is one form of relief a court may grant when ruling on such a motion, Rule 50 applies only to binding jury cases and does not apply to bench trials or portions of a trial with an advisory jury. *See Federal Ins. Co. v. HPSA, Inc.*, 480 F.3d 26, 32 (1st Cir. 1007). Accordingly, the Court will construe EQT's somewhat convoluted motion as: 1) a renewed motion for judgment as a matter of law under Rule 50(b) concerning the jury's finding that EQT was a bad-faith trespasser; 2) a motion for findings of fact and conclusions of law under Rule 52(a) concerning EQT's equitable defenses; and 3) as a motion for a new trial under Rule 59. EQT's arguments concerning its equitable defenses will be addressed by separate order within the context of the parties' motions for judgment under Rule 52.[2]

## II

### A

Under Federal Rule 50, "[j]udgment as a matter of law will be granted only where 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Imwalle v. Reliance Med. Prods., Inc.*, 515

---

[2] The parties' arguments concerning the transfer of the trespass wells will also be addressed by separate order.

F.3d 531, 543 (6th Cir. 2008) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); Fed.R.Civ.P. 50(a)(1). The court may only grant judgment as a matter of law if, "in viewing the evidence in the light most favorable to the nonmoving party, 'reasonable minds could come to but one conclusion'" – that of finding in favor of the moving party. *Imwalle*, 515 F.3d at 543 (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)). The standard for granting judgment as a matter of law under Rule 50 involves the same inquiry as for granting summary judgment under Rule 56. Thus, in reviewing a Rule 50 motion, the court should review the record as a whole while drawing "all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence" – both of which are functions left to the jury. *Reeves*, 530 U.S. at 150. Additionally, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id*.

In a diversity case such as this, when a party moves for judgment as a matter of law based on a challenge to the sufficiency of the evidence, the court should apply the standard of review "used by the courts of the state whose substantive law governs the action," which in this case is Kentucky. *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 360 (6th Cir. 2006). Under Kentucky law, a motion for judgment as a matter of law is the same as a motion for a directed verdict, *see Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 231 (6th Cir. 1997), and the trial judge should only grant such a motion if 'there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ.'" *Bierman v. Klapheke*, 967 S.W.2d 16, 18-19 (Ky. 1998); *see also Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 506 (6th Cir. 1998) (quoting and applying Kentucky case law on this point). In reviewing a motion for a directed verdict in Kentucky, "the trial judge must draw all fair and

5

reasonable inferences from the evidence in favor of the party opposing the motion." *Bierman*, 967 S.W.2d at 18. Where there is conflicting evidence, "it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses." *Id*. at 19. Because Rule 50 does not apply to matters where the jury acted in an advisory capacity, the Court need only apply this standard to the jury's finding that EQT was not an innocent trespasser. *See Federal Ins. Co*, 480 F.3d at 32.

The primary test for determining whether a willful or an innocent trespass was committed turns on "the intention, or the state of mind, of the trespasser based upon the circumstances surrounding the trespass at the time the trespass occurred." *Church and Mullins Corp. v. Bethlehem Minerals Co*., 887 S.W.2d 321, 324 (Ky. 1992). Under Kentucky law, it is "well settled" that a willful trespasser "knows he is wrong," while "an innocent trespasser believes he is right." *Lebow v. Cameron*, 394 S.W. 2d 773, 776 (Ky. App. 1965). The trespasser's intent is "a subjective matter, generally, and the mere proclamation of an innocent intent will not suffice." *Id*.; *see also Swiss Oil Corp. v. Hupp*, 69 S.W.2d 1037, 1041 (Ky. 1934) (emphasizing that the trespasser's mere testimony that he acted in good faith and believed he was right is not sufficient to entitle him to the advantage enjoyed by a good-faith trespasser). A trespasser's intent "can seldom be proved by direct evidence." *Swiss Oil Corp.*, 69 S.W.2d at 1041. Rather, it involves considering the totality of the circumstances to determine "whether the trespass was perpetrated in a spirit of wrongdoing, with a knowledge that it was wrong, or whether it was done under a bona fide mistake, as where the circumstances were calculated to induce or justify the reasonably prudent man, acting with a proper sense of the rights of others, to go in and to continue along the way." *Id*.; *Church and Mullins*, 887 S.W.2d at 324 (explaining that intent of the trespasser depends on whether he acted under "an honest conviction that he was right, and with a proper

sense of the rights of others," or whether despite knowledge that his claim may not be valid he "deliberately chose the course of willful and reckless disregard" of the other party's "irreparable property rights") (citing *Swiss Oil Corp.*, 69 S.W.2d at 1041).

"One who takes oil and gas from the land of another wrongfully is presumed to be a willful trespasser . . . ," although the presumption is rebuttable by demonstrating that "the defendant acted in good faith, honestly believing his acts complained of were privileged." *Rudy v. Ellis*, 236 S.W.2d 466, 468 (Ky. App. 1951). "The burden is always upon the offender to establish his status as an innocent or mistaken invader of another's property." *Swiss Oil Corp.*, 69 S.W.2d at 1041. Moreover, "[t]he question of the intent of the trespasser is for the trier of fact to determine," which in this case was the jury. *Church and Mullins*, 887 S.W.2d at 324. Here, the question of EQT's intent clearly turned on evidence that involved credibility determinations and factual findings, from which the jury determined that EQT was not a good-faith trespasser. The Court should not disturb the jury's finding on this point apart from a showing by EQT that there was "a complete absence of proof" as to EQT's intent. *Bierman*, 967 S.W.2d at 18-19. Put simply, EQT has not met that burden.

In support of its motion, EQT first contends that it presented proof that its land and geology departments compared proposed well locations to maps which outlined the acreage EQT thought it owned, and argues that Journey did not present evidence of a contrary belief on the part of EQT. [R. 198-1 at 17.] EQT misunderstands its burden, however. It is EQT's burden as the trespassing party to prove its good-faith belief, and not Journey's burden to prove the opposite. *See Swiss Oil Corp.*, 69 S.W.2d at 1041. At trial, the jury considered evidence that EQT never checked the blue boundaries on the Exhibit N maps against the line-by-line description on the conveyance documents, except for when Mr. Smallwood was concerned about

7

the apparent discrepancy between the 6,333 acres of the Fordson Lease listed on Exhibit A to the PSA, and the very different boundaries on Exhibit N. Tr. (Sept. 9, 2014) at 214-18. The jury learned that Mr. Smallwood then asked Michelle Weber about how the transaction documents related to the Fordson Lease should be interpreted, and saw the note that Weber wrote back indicating that Journey owned the Fordson Lease; however, despite that note, Smallwood ordered a title opinion while knowing that the title record in Letcher County would not reveal the transfer to Journey. *Id*. at 213-32; Pl.'s Trial Ex. 455.

Journey also presented evidence at trial showing that Smallwood was informed that Greg Shockley did not have the authority to bind Journey but chose to rely on Shockley's misstatements in order to proceed with the drilling. Tr. (Sept. 9, 2014) at 105, 115-16. Evidence also showed that Lester Zitkus suggested that EQT get a "corrective assignment," but that Smallwood ignored that advice and proceeded with its drilling in Letcher County without it. *Id*. at 213-14; Pl.'s Trial Ex. 173. From this and other evidence presented at trial, the jury, as the finder of fact, considered the totality of the circumstances and found that EQT did not meet its burden of overcoming the presumption of willfulness.

As further support for its arguments, EQT also contends that it obtained title opinions from outside counsel, that Journey did not drill wells on the disputed property, and that EQT did not drill wells on the disputed property after Journey filed a claim against EQT in 2011. [R. 198-1 at 17-18.] None of these arguments necessarily support a finding that the weight of the evidence was overwhelmingly contradictory to the jury's finding. The title opinions presented to the jury that EQT apparently relied upon were prepared long before the transaction with Journey occurred or dealt with tracts unrelated to those at issue in this case. *See, e.g.,* Tr. (Sept. 10, 2014) at 43-45, 58-66, 157-59. Journey explained that its choices of where and when to drill were tied

to market considerations, and such decisions say nothing about *EQT's* intent or knowledge. Finally, the fact that EQT stopped drilling wells on disputed property after it learned about a lawsuit in 2011 does not retroactively establish that its trespasses before 2011 were all in good faith. In short, none of EQT's arguments demonstrate that there was "*no* sufficient evidentiary basis" for a reasonable jury to conclude that EQT acted in bad faith when drilling trespass wells. *See Reeves*, 530 U.S. at 149 (emphasis added).

The standard for granting judgment as a matter of law under Rule 50 is not whether reasonable minds could possibly disagree with the jury's verdict, but rather whether reasonable minds could come to only one conclusion – that which the moving party advocates. *See Gray*, 263 F.3d at 598. In this case, the evidence is not overwhelmingly against the jury's finding, such that no reasonable juror could find that EQT acted in bad faith. EQT had the burden of convincing the jury that EQT made an innocent mistake without suspecting its assumptions about the contract were wrong. This showing depended on the credibility of the witnesses who testified at trial.[3] While simply asserting a good-faith belief is not sufficient to establish it, the jury was the entity charged with weighing the credibility of these witnesses, and after doing so, rejected EQT's defense of good-faith trespass. For a Rule 50 motion, the Court is not to weigh the credibility of those witnesses concerning EQT's assertions of good faith. *See Reeves*, 530 U.S. at 150.

Thus, EQT has not demonstrated how the evidence presented at trial made the verdict so entirely unreasonable that the Court should substitute its own judgment for that of the jury's concerning the issue of willful trespass. As noted above, evidence was presented that could have led a reasonable trier of fact to suspect that EQT had suspicions about or was at least on notice

---

[3] Although EQT implies that it was never allowed to tell the jury its side of the story, EQT did present testimony at trial from several of its employees concerning their belief that all of the conveyances were limited to the property within the blue boundaries on the maps. *See, e.g.*, Tr. (Sept. 9, 2014) at 180; Tr. (Sept. 10, 2014) at 69-79.

9

that the Exhibit N map boundaries were not the ultimate factor in determining what property was conveyed, and yet EQT ignored those warning signs and proceeded to drill trespassing wells without first resolving the discrepancies between Exhibit N and Exhibit A to the PSA. Evidence was also presented that even if the conveyances were limited to the Exhibit N boundaries, as EQT claims it believed, EQT still did not convey all of the property *within* those boundaries to Journey. Unless there can be only one reasonable conclusion as to the proper verdict, judgment as a matter of law should not be entered. *See Imwalle*, 515 F.3d at 543. When viewing the evidence in the light most favorable to Journey as the non-moving party, there are certainly issues of material fact requiring credibility determinations upon which reasonable minds could differ – a situation in which the Court should not substitute its judgment for that of the jury. *See id*. Thus, EQT's motion for judgment as a matter of law will be DENIED.[4]

**B**

As provided by Federal Rule of Civil Procedure 59(a)(1)(A), "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party. . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In the Sixth Circuit, Rule 59 generally has been interpreted as allowing new trials when the jury reaches a "seriously erroneous result" due to "(1) the verdict being against the [clear] weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by

---

[4] The Court notes that EQT's motion for a new trial somewhat conflates the standards of Federal Rules 50(b) and 59. Because the standard for obtaining a new trial under Rule 59 is generally lower than that required for an alternative motion for a new trial under Rule 50(b), the Court will discuss EQT's request for a new trial within the context of Rule 59. Thus, to the extent EQT argues that it would meet the standard for Rule 50 had it been allowed to present other evidence that was excluded, EQT is essentially arguing that the Court improperly excluded certain evidence and requests a new trial be granted on those grounds – an argument that is better addressed when discussing EQT's motion for a new trial under Rule 59.

prejudice or bias." *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509 (6th Cir. 2013) (internal quotation marks and citations omitted) (alteration in original).

Here, because the jury did not determine damages, and EQT does not argue that improper prejudice or bias exists, EQT must demonstrate that the verdict was against the clear weight of the evidence in order to be granted a new trial. In some circumstances, this can be shown by demonstrating that the court made incorrect rulings on the admissibility of evidence. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045 (6th Cir. 1996). EQT's primary argument is that the Court erred in excluding evidence of EQT's pre-contractual intent. In order to obtain a new trial on the basis of erroneously excluded evidence, however, EQT must show not only that the evidence was wrongly excluded but also that allowing the evidence would have changed the outcome. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004).

> Federal Rule of Civil Procedure 61 states as follows:
>
> Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed.R.Civ.P. 61. In other words, even if the moving party demonstrates that an error occurred, the trial court "may not grant a new trial unless in the absence of the error, the outcome of the trial would have been different." *Burks v. O'Connor, Kenny Partners, Inc.*, 33 F.App'x 781, 783 (6th Cir. 2002); *see also Cotton v. City of Franklin*, 494 F.App'x 518, 521 (6th Cir. 2012) (explaining that "a motion for a new trial will not be granted unless the moving party suffered prejudice"); *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998) (finding that although the district court erred by excluding certain evidence, a new trial was not warranted because admitting the excluded evidence would not have resulted in a different outcome). Thus,

the party seeking a new trial based on the exclusion or admission of certain evidence "bear[s] a heavy burden" of proving that a new trial is necessary because of harmful prejudice resulting from the alleged error. *Miller v. Am. President Lines, Ltd*., 989 F.2d 1450, 1466 (6th Cir. 1993); *see also Tompkin*, 362 F.3d at 891. The decision to grant a new trial lies soundly within the district court's discretion. *J.C.Wyckoff & Assocs., Inc.,* 936 F.2d 1474, 1487 (6th Cir. 1991). Although discretion in granting a new trial is greater than the court's authority to grant a motion for judgment as a matter of law, *see Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007), a new trial should only be granted "when the verdict is against the clear weight of the evidence." *National Polymer Prods. v. Borg-Warner Corp*., 660 F.2d 171, 178 (6th Cir. 1981).

**1**

First, as explained above, the jury verdict on EQT's innocent trespass claim was binding and not advisory. Thus, on the issue of trespass, the Court must examine the jury's findings as compared to the weight of the evidence, but in doing so, "the court is not to set aside the verdict simply because it believes that another outcome is more justified." *Denhof*, 494 F.3d at 543. Rather, "[t]he court is to accept the jury's verdict 'if it is one which reasonably could have been reached.'" *Id*. (quoting *Duncan v. Duncan*, 377 F.3d 49, 52 (6th Cir. 1967)). In *Denhof*, the Sixth Circuit went on to quote extensively from the *Duncan* opinion, to state the following:

> Where no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts.

*Id*. at 543 (quoting *Duncan*, 377 F.3d at 54). Thus, when considering whether to grant a new trial because the verdict is against the weight of the evidence, the court must be particularly

cautious in substituting its own judgment for that of the jury and should not grant a new trial "where it is clear that the jury verdict was reasonable." *Id*. The Sixth Circuit has used this heightened standard of review when granting a new trial resulted in a trial court improperly substituting its own judgment for that of the jury concerning credibility determinations of witnesses. *See id*. at 543-44 (quoting *Holmes*, 78 F.3d at 1047-48).

Here, EQT alleges that the Court wrongly excluded evidence of EQT's intent concerning the conveyance documents. Specifically, EQT argues that the Court's pretrial rulings on the motions for summary judgment and the motions in limine prevented EQT from introducing evidence that it acted in good faith.[5] [R. 198-1 at 11-12.] The purpose of motions for summary judgment and motions *in limine* is to limit the evidence presented at trial. The Court's rulings were adequately explained in the orders and opinions already issued in this case, and were supported by basic rules of contract law, and EQT has presented no adequate reason for re-visiting all of those rulings at this point in the process.[6] After reviewing extensive briefing involving hundreds of pages, and hearing oral arguments on the matter, the Court ruled that the contract between Journey and EQT was not ambiguous, and that under basic rules of contract law, a contract is construed against the drafter and extrinsic evidence of EQT's pre-contractual intent was not admissible. [R. 141 at 15-26, 34-35.] Based on that determination, the Court then limited the scope of trial to exclude evidence of EQT's pre-contractual intent, and also sustained several of Journey's pre-trial objections to various evidence that EQT wanted to present, ruling that much of it was not relevant in light of the Court's ruling on the scope of trial. [*See* R. 185.]

---

[5] Indeed, EQT's arguments on this point are akin to asking the Court to reconsider all of its prior rulings in this case, but EQT does not even attempt to meet the standard for a motion for reconsideration.

[6] Questions of contract interpretation are matters for the Court, and not the jury. *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006).

13

EQT's motion for a new trial is based almost entirely on its claim that the Court wrongly excluded evidence about EQT's pre-contractual intent and beliefs concerning the blue lines on Exhibit N maps. [R. 198-1 at 12.] However, EQT points to no legal authority to demonstrate that the Court's decision to exclude this evidence was erroneous. [*See* R. 198-1 at 10-12.] It is well-established that the trial judge has "broad discretion" in determining whether to admit or exclude evidence. *Cummins*, 727 F.3d at 509 ("the district court has broad discretion to determine questions of admissibility; an evidentiary ruling is not to be lightly overturned."); *see also Miller*, 989 F.2d at 1466 (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962)). Federal Rule of Evidence 403 provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. Concerning the evidence EQT now says was wrongly excluded, the Court did not necessarily decide that such evidence had no relevance at all, but that given the Court's interpretation of the contract when ruling on the parties' motions for summary judgment, any relevance it had was substantially outweighed by the potential danger of confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence. This determination was based on basic principles of contract law, and is supported by the broad discretion afforded the trial judge when determining to admit or exclude evidence. *See Cummins*, 727 F.3d at 509; *Nolan v. Memphis City Schools*, 589 F.3d 257, 265 (6th Cir. 2009).

Even if the Court erred in excluding the evidence, however, EQT must also establish that the exclusion of that evidence caused EQT harmful prejudice. *See Cummins*, 727 F.3d at 509 (finding that even if an evidentiary ruling is erroneous, a new trial is only justified if the error "was not harmless; that is, only if it affected the outcome of the trial."); *see also Tompkin*, 362 at

14

897 ("[c]laims of error with regard to the admission or exclusion of evidence are prime candidates for application of the harmless error rule").  The jury's decision concerning EQT's innocent trespass claim ultimately depended on whether the jury believed EQT's assertions that it made an innocent mistake, or Journey's assertions that EQT acted despite knowing that there was likely a discrepancy in the conveyance documents.  Concerning its innocent trespass claim, the specific evidence that EQT alleges was wrongly excluded is as follows: 1) testimony from Joseph Morris about the origin and purpose of the blue lines used in preparing the sales offering; 2) deposition testimony from Lester Zitkus and Cindy Perdue concerning EQT's intent to limit the transaction to property within the blue lines of Exhibit N; and 3) further leeway in cross-examining Journey's witnesses Gregory Bird and Gregory Shockley about Journey's alleged awareness of EQT's intent.  [R. 198-1 at 11-12.]  Accordingly, even if all this evidence had been presented at trial, such evidence still would have required the jury to make credibility determinations as to which witnesses they believed and to what extent they believed them.  Moreover, determining whether admitting this evidence would have altered the jury's verdict also requires making credibility determinations.  In light of this Circuit's heightened standard concerning the trial court's substitution of its own credibility determination for that of the jury, the Court is particularly reluctant to second-guess how the additional evidence EQT seeks to admit would have affected the jury's ability to weigh evidence and judge witness credibility. *See, e.g., Holmes*, 78 F.3d at 1047-48 (reversing the district court's grant of a new trial when "the case came down to a question of who the jury believed").

Keeping this standard in mind, EQT has not demonstrated that this evidence would have changed the jury's verdict.  EQT claims that but for the Court's excluding evidence of pre-contractual intent, Joe Morris would have testified about "the origin, evolution, and purpose of

15

the blue lines which were used in preparing EQT's sales offering and the exhibits to the PSA . . . later used by EQT in selecting well sites." [R. 198-1 at 11.] Without further specifics as to what EQT thinks Morris would have said and why, it is difficult to see how the absence of such testimony prejudiced EQT as prejudice has been defined above. Morris did testify on direct examination about the use of the blue lines and how they were the same or similar to the overlay used by EQT's geology department in determining what property EQT owned. Tr. (Sept. 10, 2014) at 69-75. Morris also stated that he, and by extension EQT's geology department, believed that the property sold was within the blue lines on the map. *Id*. at 70, 80. On cross-examination, Morris testified that the blue lines were placed on the maps when EQT was first deciding what areas to sell, and that he and Lester Zitkus had created map outlines of the tracts they wished to be part of the sale before the actual contract with Journey.[7] *Id*. at 75-77. Thus, it appears that Morris did testify about the purpose of the blue lines, and EQT has not demonstrated how further testimony on this point would have altered the jury's conclusions.

     In particular, EQT seems to ignore other testimony that the jury heard that would not necessarily lead a reasonable person to conclude EQT acted in good faith. For example, Morris' testimony on cross-examination also revealed that he did not know who drew the blue outlines on the 2002 map or why, and that he "never really had the information about what was actually sold to Journey," and "never really kn[ew] what was sold to Journey." *Id*. at 80. He also testified that he did not know whether the individual who actually drew the blue lines ever knew what was conveyed in 2001 to Journey, and that he himself never reviewed any of the conveyance documents to Journey, nor did he ever make an effort to compare the blue map outlines to what was conveyed to Journey in the rest of the conveyance documents. *Id*. at 81-82.

---

[7] Indeed, counsel for Journey was concerned that this testimony bordered on evidence that the Court had ruled should be excluded. *Id*. at 77-78.

In fact, Morris testified that EQT did not request that anyone in the geology department who drew the maps look at or compare them to the listed properties on Exhibit A of the contract to make sure the maps were correct. *Id*. at 82. In light of this testimony, it does not appear that further testimony from Morris would have made any difference in the jury's verdict.

As for Mr. Zitkus and Ms. Perdue, because EQT only sought to introduce portions of their deposition testimony, the Court cannot engage in guessing what they would have testified about apart from their depositions.[8] The excluded excerpts from Mr. Zitkus' deposition indicate that the blue lines on the Exhibit N maps "appear to identify the properties" that would be part of the sale [R. 74 at 103-05], but he could not recall "any knowledge of any representation, written, oral or otherwise to Journey back in 2001 that would in any way limit the property. . . to be sold other than the executed documents."[9] [R. 74 at 34-36, 62.] In Ms. Perdue's deposition, when asked about any blue lines or maps being a limitation on the properties conveyed, she repeatedly answered, "I don't recall." [R. 81 at 72-73.] Although EQT contends that exclusion of the testimony from Morris, Zitkus, and Perdue "prevented EQT from demonstrating the basis for its belief that property outside the blue lines depicted on Exhibit N was excluded from the transaction" [R. 210 at 3], even if EQT had been able to somehow demonstrate such a belief from the above-referenced testimony, a reasonable jury could still have found from other evidence presented that later occurrences put EQT on notice that its original belief was mistaken. Nothing about this testimony satisfies the "great weight of the evidence" standard or the harmful prejudice standard.

---

[8] EQT also does not cite to any particular portion of that deposition testimony in support of its claim that their testimony would have given the jury a better context for determining EQT's intent. [*See* R. 198-1 at 11-12.]

[9] Journey appropriately points out that Phil Elliott, and not Mr. Zitkus, was the principal EQT representative involved in negotiating the contract with Journey, and notes that EQT never deposed Mr. Elliott. [R. 205 at 7.]

Finally, as to how EQT alleges Mr. Bird and Mr. Shockley would have testified had EQT been able to cross-examine them further, Journey makes a strong argument that if evidence of Journey's understanding of EQT's intent existed, EQT would have presented such evidence in its motion for summary judgment concerning mutual mistake, but it did not do so. [*See* R. 205 at 7-8.] Moreover, Mr. Shockley did testify that he did not know of any representations on the part of EQT to Journey concerning the blue lines, and that he himself only made assumptions about them. [R. 78 at 58-62.] Mr. Bird was not involved in any direct negotiations between EQT and Journey, and EQT does not explain at all how his testimony would have demonstrated that Journey "was well aware of EQT's intent regarding the transaction." [R. 198-1 at 12.] Given the broad deference afforded the district judge in making evidentiary rulings, EQT bears a significant burden in demonstrating that the exclusion of such testimony caused harmful prejudice, yet in light of the other damaging evidence presented at trial, EQT cannot show how any of the excluded testimony would have altered the jury's verdict. Accordingly, EQT has not demonstrated that this evidence was wrongly excluded, nor has EQT demonstrated sufficient harmful prejudice so as to convince the Court to substitute its own judgment for that of the jury's, and therefore EQT's motion for a new trial is DENIED.

**2**

To the extent that EQT requests a new trial with regard to its equitable defenses, its motion will also be denied.[10] Again, EQT's request for a new trial is based on its argument that the Court wrongly excluded the evidence discussed above, but does not demonstrate a legal basis

---

[10] EQT's brief claims it was "denied a fair trial with regard to presentation of its innocent trespass and equitable defenses" and requests a new trial on all issues. [R. 198-1 at 12.] However, EQT does not discuss any application of Rule 59 to its equitable defenses, and the very next section of EQT's brief properly requests the Court to enter findings under Rule 52 in EQT's favor on the equitable defenses. Thus, the Court will address the issue of EQT's equitable defenses more fully within the context of a motion for judgment under Rule 52, and will do so in a separate order entered subsequently to this one.

to support that contention. Perhaps most importantly, EQT has not shown how if the Court had ruled differently on excluding evidence of pre-contractual intent, the outcome concerning the equitable defenses would have been any different. Even had such evidence not been excluded, EQT points to nothing in that evidence that would demonstrate that Journey intentionally surrendered or relinquished a known right, or that Journey intentionally caused EQT to detrimentally rely on Journey's misrepresentations or concealment of material facts – elements which must be established in order to prevail on claims of waiver or estoppel, respectively. *See Barker v. Stearns Coal & Lumber Co.*, 163 S.W.2d 466, 470 (Ky. 1942); *Edmondson v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 781 S.W.2d 753, 755-56 (Ky. 1989). Similarly, the excluded evidence would not have established EQT's claim of laches because the testimony EQT argues should have been presented to the jury related to *EQT's* beliefs, and not to whether Journey delayed in asserting known rights so long that it would have been inequitable to enforce Journey's claim. *See Fightmaster v. Leffler*, 556 S.W.2d 180, 183 (Ky. Ct. App. 1977). Thus, even with the evidence EQT claims was improperly excluded, EQT has not shown how that evidence would have supported EQT's equitable defenses.

Moreover, the jury's verdict was only advisory concerning the equitable defenses. The Court, not the jury, is the entity charged with determining whether Journey's claims are barred by any of EQT's defenses. Most of the evidence EQT claims was wrongly excluded at trial *has* been presented to the *Court*, even if not to the jury, either in whole or in part. The Court is fully aware of EQT's arguments about its intent and beliefs concerning the blue lines on Exhibit N, and indeed, has heard these arguments multiple times. There is no need to have a new trial in order to present this evidence to the Court again. Rather, the more appropriate focus of EQT's

19

arguments is to move for specific findings of fact and conclusions of law under Federal Rule 52, as will be discussed more fully in a separate order.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. EQT's Motion for Judgment as a Matter of Law and for a New Trial [**R. 198**] is **DENIED** to the extent that it addresses the issue of willful trespass;[11] and

2. Based on EQT's representations at Docket Entry No. 201, Journey's Motion for a Hearing [**R. 200**] is **DENIED as MOOT.**

This 24th day of June, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

[11] To the extent that EQT's motion addresses its equitable defenses, the Court will further address and rule on that issue in its Order and Entry of Judgment under Federal Rule 52, entered subsequently to this Order.